UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　Plaintiff,<br><br>v.<br><br>GEOSYN MINING, LLC, CALEB JOSEPH WARD, and JEREMY GEORGE MCNUTT,<br><br>　　Defendants. | Cause No. 4:24-cv-00365-P |

**PLAINTIFF'S RESPONSE TO ORDER AND BRIEF IN SUPPORT**

Pursuant to the Court's Order dated January 29, 2025 [Doc. 49] ("Order"), Plaintiff Securities and Exchange Commission ("Plaintiff," "SEC," or "Commission") files its Response to Order and Brief in Support and respectfully shows the following:

**FACTUAL BACKGROUND**

1. On April 24, 2024, Plaintiff filed its case against Defendants Geosyn Mining, LLC ("Geosyn"), Caleb Joseph Ward ("Ward"), and Jeremy George McNutt ("McNutt") (collectively, "Defendants"), alleging that Defendants defrauded investors out of millions of dollars though the offer and sales of securities in the form of investment contracts called Client Services Agreements ("CSAs").

2. As set forth in Plaintiff's Motion for Summary Judgment and Brief and Appendix in Support [Docs. 46-48], the CSAs were contracts to purchase crypto asset mining machines ("Machines") coupled with an agreement to operate the Machines on the investors' behalf and distribute profits to the owners/investors, on a pro rata basis, in the form of mined bitcoin.

3.     Defendants persuaded investors that Geosyn's managed-mining business would be a better investment than buying bitcoin and told investors that its low-cost wholesale electricity contracts gave it a competitive advantage over other hosting companies. In addition, Defendants guaranteed investors that Geosyn would: (1) use 85% of investor funds to purchase the Machines; (2) run the Machines 98% of the time; (3) provide 24/7 onsite security; and (4) produce profits of over 100% within 18 months (to be paid in bitcoin distributions).

4.     In reality, Geosyn had no access to low-cost electricity, and the Defendants: (1) used only 39% of investor money as promised; (2) failed to purchase 400 of the 1,400 Machines it contracted to buy and failed to ever operate most of the Machines it did buy; (3) failed to secure the Machines, resulting in additional investor losses; and (4) did not produce any profits, and in fact, used investor funds to buy bitcoin to fund investor distributions.

5.     Bank records establish that Ward and McNutt spent over $1.2 million of investor funds for their personal benefit.

6.     On January 20, 2025, President Donald J. Trump took office.

7.     On January 21, 2025, the SEC issued a press release titled "SEC Crypto 2.0: Acting Chairman Uyeda Announces Formation of New Crypto Task Force" (the "SEC Press Release"). The SEC Press Release announced that Acting Chairman Uyeda has "launched a crypto task force dedicated to developing a comprehensive and clear regulatory framework for crypto assets," and stated that its focus would be "to help the Commission draw clear regulatory lines, provide realistic paths to registration, craft sensible disclosure frameworks, and deploy enforcement resources judiciously." A true and correct copy of the SEC Press Release is attached hereto as Exhibit "A."

8.     On January 29, 2025, the Court issued an Order in the instant case, which stated:

> Given the recent change in administration, the statements made by President Trump and the interim SEC chair's statements regarding rolling back the SEC's enforcement push against crypto industry players, the Court wishes for the Parties to file briefs outlining the effect of the new administration and its statements on this case.

[Doc. 49].

9. On February 5, 2025, the Government filed a criminal action against Defendants based upon the same facts as alleged in the SEC's Complaint. *See United States v. Ward, et al.*, Case No. 4:25-MJ-00086-BJ (N. D. Tex. [Ft. Worth]) (charging a conspiracy to commit wire fraud). A true and correct copy of the Criminal Complaint is attached hereto as Exhibit "B."

## ARGUMENT AND AUTHORITIES

Neither the SEC's Crypto Task Force nor the current administration's stance on the crypto industry should have any effect on the instant case for two reasons. First, this case does not relate to the regulation of crypto assets or to the registration of any crypto asset offering with the SEC. Defendants were not offering or selling bitcoin or any other crypto asset: they were offering and selling investments in a managed mining business through investment contracts, *i.e.,* the CSAs.

Congress has defined investment contracts as securities, and long-established precedent confirms that the statutory definition applies regardless of whether the issuer engages in a business that: sells real property and contracts to maintain orange groves (*see SEC v. W.J. Howey Co.,* 328 U.S. 293, 295 (1946)); leases payphones that the promoter then operates in exchange for cash returns (*see SEC v. Edwards*, 540 U.S. 389 (2004)); sells cattle or live beavers for breeding and contracts for their care and management (*see SEC v. Agridime, LLC, et al.,* Case No. 4:23-cv-1224-P (N.D. Tex. [Ft. Worth], filed Dec. 11, 2023) (cattle); *Cont'l Mktg Corp. v. SEC,* 387 F.2d 466, 470 (10th Cir. 1967) (beavers)); or sells crypto mining machines coupled

3

with an agreement to operate them (*see SEC v. Teshuater, LLC,* 2024 WL 1348432, at *4 (S.D. Tex. [Houston] Mar. 29, 2024); *see also SEC v. Green United, et al.,* 2024 WL 4267322 (D. Utah [Central Div.] Sept. 23, 2024). These cases are distinguishable from cases which concern the regulation of crypto assets or the registration of any crypto asset offering with the SEC, and thus, like the instant case, do not fall within the mandate of the SEC's Crypto Task Force.

Second, the Defendants in this case are not "crypto industry players," but instead are two individuals with no background or expertise in the "crypto industry" who raised $5.6 million from investors in a run-of-the-mill offering fraud. Their only connection to the crypto industry was buying mining machines that are available to the public, never operating most of them, and buying bitcoin in their own crypto brokerage account to hide the fact that they weren't mining it as promised. In so doing, they sent fabricated documents to investors and spent over $1.2 million of investor funds for their personal benefit, including vacation travel, personal legal fees, watches, and over $20,000 at a Las Vegas nightclub.

Finally, this is not a case of first impression or a novel application of facts to well-established law. Other district courts, including within the Fifth Circuit, have found that the sale of crypto mining machines coupled with hosting agreements to operate the machines was an "investment contract," and therefore, a security. *See SEC v. Teshuater, LLC,* 2024 WL 1348432, *4 (S. D. Tex. Mar. 29, 2024) (granting summary judgment to the SEC and finding that defendant's bitcoin mining operation was an investment contract where investor money was pooled into defendant's bank accounts to support its mining program, and investors' returns depended on its successful use of their funds); *see also Green United,* 2024 WL 4267322 at *3 (denying defendants' motion to dismiss and finding that the sale of crypto mining hardware

coupled with a hosting agreement was an "investment contract"). Those cases, like this one, did not raise issues relating to the regulation of the crypto industry or crypto assets.

## CONCLUSION

For the foregoing reasons, neither the SEC's Crypto Task Force nor the current administration's stance on the crypto industry should have any effect on the instant case.

Dated: February 11, 2025.                    Respectfully submitted,

*s/ Jennifer D. Reece*
Jennifer D. Reece
Texas Bar No. 00796242
Robert J. Boudreau
Texas Bar No. 24123473
SECURITIES AND EXCHANGE COMMISSION
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, TX  76102
Phone: (817) 978-6442 (JDR)
           (817) 978-0165 (RJB)
Fax: (817) 978-4927
*reecej@sec.gov*
*boudreauro@sec.gov*

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION

## CERTIFICATE OF SERVICE

I certify that on February 11, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, Dallas Division, using the electronic case filing system of the court. I hereby certify that I have served all counsel according to Fed. R. Civ. P. 5(b)(2).

*/s/Jennifer D. Reece*
Jennifer D. Reece